UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Jody Burtsell

            v.                          Civil No. 1:08-cv-455-JL

Nicholas A. Toumpas, Commissioner,
New Hampshire Department of Health
and Human Services

**MEMORANDUM ORDER**

This controversy concerns the proper allocation of a personal injury settlement between an injured Medicaid beneficiary and a state Medicaid payor in light of the Supreme Court's decision in Arkansas Department of Health & Human Services v. Ahlborn, 547 U.S. 268 (2006), and the New Hampshire statute that establishes a Medicaid payor's claim against such a settlement as well as a procedure for apportioning it, N.H. Rev. Stat. Ann. §§ 167:14-a, II-IV.[1]  After settling his medical malpractice claim against third parties, the plaintiff, Jody Burtsell, filed this action for declaratory and injunctive relief, asserting that the defendant, the New Hampshire Department of Health and Human Services ("HHS"), has demanded recovery from the settlement for Medicaid expenditures it made on

_____

[1]These statutes were amended during the pendency of this litigation.  See  2010 N.H. Laws, Ch. 15 (H.B. 577) (effective May 7, 2010), but the parties agree that the amended version of the statute controls so far as is relevant here.

his behalf in excess of that permitted under federal Medicaid law or the New Hampshire statute.

As this court has already determined, it has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question).  See Burtsell v. Toumpas, 2009 DNH 069.  After the parties cross-moved for summary judgment, see Fed. R. Civ. P. 56, the court conducted oral argument, together with an evidentiary hearing, on the issues raised in the motions, as well as in requests for findings of fact and rulings of law submitted at the court's direction. In a subsequent margin order, the court denied the cross-motions without prejudice, explaining that it would address the parties' arguments in a comprehensive order resolving all of the issues in the case.[2]

For the reasons explained fully infra, the court rejects Burtsell's argument that federal law preempts the New Hampshire statute giving HHS a claim against his settlement, and also rejects HHS's arguments that it is entitled to reimbursement of its Medicaid expenditures in full.  Instead, based on those rulings and the evidence presented at the hearing, the court makes an equitable apportionment to HHS in the sum of $53,124.61 in accordance with N.H. Rev. Stat. Ann. § 167:14-a, IV.  The

---

[2]This order constitutes this court's findings of fact and rulings of law in this matter.  See Fed. R. Civ. P. 52(a).

court also concludes that Burtsell is entitled to recover his reasonable attorneys' fees in this matter under 42 U.S.C. § 1988.

I.   **Background**

A.   **Factual background**

This case arises from a medical malpractice action Burtsell filed in New Hampshire Superior Court in January 2007.  In that action, Burtsell claimed to have suffered severe injuries and permanent disability from botched ulcer surgery at a New Hampshire hospital in November 2004.  In June 2007, after the suit was filed, HHS received a fax from a paralegal working for Burtsell, stating that he "was the victim of medical malpractice" and asking whether HHS held any "liens for medical benefits paid on behalf of [] Burtsell which are directly related to the medical malpractice."  The paralegal then had a series of telephone conversations with an HHS representative about the amount of Medicaid expenditures made on Burtsell's behalf.

On June 3, 2008, the parties to the malpractice action participated in a mediation session.  It is undisputed that HHS received no prior notice of this session.  Prior to the session, Burtsell, through counsel, submitted a summary to the mediator, claiming medical expenses (up until that time) in the amount of $628,548.07, as well as future medical expenses in the amount of

$148,614.  The summary also claimed lost wages in the amount of $1.327 million, asserting, in essence, that Burtsell's medical injury had permanently disabled him from any meaningful employment.  Based on these figures, Burtsell's mediation summary demanded $2.6 million.

While the mediation session ended without a settlement, counsel for both parties continued to negotiate.  On June 10, 2008, counsel for Burtsell in the malpractice action sent a letter to HHS, stating that "current records indicate that the amount of the Medicaid lien is $75,892.30" but asking HHS to "accept 30% of [this] outstanding balance to resolve [its] interest in the case."  The letter noted that counsel was "doing [his] best to put together [a] settlement."

By mid-June--and before Burtsell's counsel received any response from HHS--the parties to the medical malpractice action agreed to a settlement in the lump sum of $850,000.  On June 23, 2008, Burtsell's counsel sent a letter to HHS informing it of this development, and also that counsel had reduced his fees by $25,000 "[t]o facilitate this settlement."  This letter asked HHS to reduce its lien by 50 percent.

Burtsell's counsel subsequently sent a letter to his client explaining that only $419,507.32 of the $850,000 "gross settlement" was being disbursed to him.  The letter explained

4

that one-third of the gross settlement--less the $25,000 reduction--i.e., $258,050, was being used to pay counsel's fees, while approximately $32,000 was being used to reimburse counsel for costs.  The letter further explained that another $140,641.41 would be held in escrow pending resolution of various third-party liens on the settlement, some of which counsel was still "try[ing] to negotiate downward."

In the meantime, on July 3, 2008, HHS sent Burtsell's counsel a "counteroffer" to settle its Medicaid lien for $70,000, as opposed to the full amount of $75,892.30.  This small reduction, the letter explained, reflected the fact that counsel for Burtsell had reduced his own fees, as well as "the litigation costs involved if this matter reached the 'Petition for Equitable Apportionment' stage."  The letter further explained that there "was not much room for compromise" on HHS's lien because, among other things, the portion of the settlement "reasonably attributable to past medical expenses . . . is sufficient to discharge the lien in full."  The letter also noted that HHS had not received the "required notice" of "any scheduled trial, alternative dispute resolution hearing, or settlement," and, therefore, "reserve[d] the right to claim prejudice.  For example, because notice was not provided, [HHS] was not able to participate in the mediation."

5

Burtsell eventually resolved the liens against the settlement held by the other third parties who had paid for or furnished him the medical care necessitated by the alleged malpractice, including a private insurer, Medicare, and a third-party hospital.  Each of these parties accepted substantially less than the amount of its lien.  Specifically:

•the private insurer accepted $62,256.75 in settlement of its lien of $88,938.12 (a discount of 30 percent);

•Medicare accepted $60.34 in settlement of its lien of $202.12 (a discount of 70 percent); and

•the third-party hospital accepted $1,955.02 in settlement of its lien of $3,910.33 (a discount of 50 percent).

HHS, however, continued to demand payment of the entire amount it had paid, through its Medicaid program, as a result of Burtsell's injury--again, $75,892.30.

That prompted Burtsell to file this action.  He asserts that HHS's "failure and refusal to limit the recovery of Medicaid benefits to that part of the third-party settlement attributable to the recovery of medical costs violates" the anti-assignment and anti-lien provisions of the federal Medicaid statute, 42 U.S.C. §§ 1396k(a)(1)(A), 1396p(a)(1), as construed by the Court in Ahlborn.  Burtsell also now argues (though he did not at the outset) that these provisions pre-empt the New Hampshire statute entitling HHS to recover its Medicaid expenditures from

6

third-party settlement proceeds, N.H. Rev. Stat. Ann. § 167:14-a, III-a. In the alternative, he invokes that statute as the basis for an equitable apportionment of the settlement between himself and HHS, see id. § 167:14-a, IV, that would result in HHS's recovery of significantly less than the full amount of its Medicaid expenditures. HHS, for its part, advances a variety of arguments in support of its position that it is entitled to recover the full amount of its Medicaid expenditures on Burtsell's behalf.

**B.   Legal framework**

**1.   Federal and state Medicaid law**

The Medicaid program, established by Title XIX of the Social Security Act, see 42 U.S.C. § 1396 et seq., is a cooperative federal and state program providing payment for medical services to eligible individuals and families. Ahlborn, 547 U.S. at 275. States that participate in the Medicaid program are reimbursed by the federal government for a portion of the payments they make to recipients, provided the states meet certain statutory eligibility requirements. See id. at 275-76.

Among other things, each participating state's plan must require that recipients, as a condition of their own eligibility for Medicaid, assign to the state their rights "to payment for

7

medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A).
This is generally known as the "assignment provision."  In
accordance with this requirement, the New Hampshire Medicaid
statute provides that any recipient, "by his acceptance of such
assistance, shall be deemed to have assigned any claim or right
of action against any person or party to the commissioner or
[HHS], to the extent that such assistance is furnished." N.H.
Rev. Stat. Ann. § 167:14-a, I.

The federal Medicaid statute requires each participating
state to have a plan enabling it to identify any third parties
liable for medical expenses funded through its Medicaid program
and to "seek reimbursement for such assistance to the extent of
such legal liability." 42 U.S.C. § 1396a(a)(25)(B).  This is
generally known as the "recovery provision."  In accordance with
this requirement, the New Hampshire Medicaid statute authorizes
the state to bring its own action against any "person or party
against whom the recipient has a legally cognizable claim for
expenses or support" to recover the amount of assistance the
state has furnished to the recipient. N.H. Rev. Stat. Ann.
§ 167:14-a, II.

The federal Medicaid statute, however, also imposes limits
on a state's ability to recover funds from Medicaid recipients.
The so-called "anti-lien" provision states that "[n]o lien may be

imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan," subject to certain exceptions not relevant here. 42 U.S.C. § 1396p(a). To similar effect, an "anti-recovery provision" states that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made," except, again, under circumstances not relevant here. 42 U.S.C. § 1396p(b)(1).

### 2. **Ahlborn**

In Ahlborn, supra, the United States Supreme Court reviewed an Arkansas statute that imposed state liens on settlement payments by third parties to Medicaid recipients without regard to the proportion of the settlement representing medical costs. 547 U.S. at 274. The Court held that this statute was pre-empted by the anti-lien provision of the federal Medicaid statute, explaining:

> There is no question that [the state] can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume . . . that [the state] can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. But that does not mean that [the state] can force an assignment of,

> or place a lien on, any other portion of [a
> recipient's] property . . . .  [T]he exception carved
> out by §§ 1396a(a)(25) and 1396k(a) is limited to
> payments for medical care.  Beyond that, the anti-lien
> provision applies.

Id. at 284-85 (emphasis added).  After Ahlborn, then, a state's

recovery from a third-party personal injury settlement to a

Medicaid recipient is limited to that portion of the settlement

representing medical expenses.  See, e.g., Lima v. Vous, 94 Cal.

Rptr. 3d 183, 194 (Cal. Ct. App. 2009); Rathbun v. Health Net of

Ne., Inc., No. 01CV085012640S, 2009 WL 3086289, at *11 (Conn.

Super. Ct. Aug. 21, 2009); Idaho Dep't of Health & Welfare v.

Hudelson, 196 P.3d 905, 910-11 (Idaho 2008); Lugo v. Beth Israel

Med. Ctr., 13 Misc. 3d 681, 684-85 (N.Y. Sup. Ct. 2006).

This aspect of Ahlborn forced many states to overhaul their

approach to collecting Medicaid payouts from recipients' personal

injury settlements.  See, e.g., Doran v. Mo. Dep't of Soc.

Servs., No. 07-cv-04158-NKL, 2008 WL 4151617, at *10 (W.D. Mo.

Sept. 2, 2008); Bolanos v. Superior Court, 87 Cal. Rptr. 3d 174,

176 (Cal. Ct. App. 2009); Harris v. City of N.Y., 16 Misc. 3d

674, 678-79 (N.Y. Sup. Ct. 2007).  As one court observed, the

fundamental consequence of Ahlborn is that

> a settlement that does not distinguish between past
> medical expenses and other damages must be allocated
> between these two classes of recoveries.  Without such
> an allocation, the principle set forth in Ahlborn, that
> the state cannot recover for anything other than past

> medical expenses cannot be carried into effect . . . .
> In other words, an allocation between past medical and
> other expenses or damages may be made by the judgment
> itself.  If there is no such allocation, as in
> settlement, the parties must attempt to allocate; if
> they cannot agree, they must turn to the court.[3]

Bolanos, 87 Cal. Rptr. 3d at 180.

How a court should go about allocating a personal injury

settlement between the recipient and the state, however, was not

addressed in Ahlborn.  There, the parties had stipulated that:

(1) if the federal Medicaid statute limited the state's recovery

to only medical expenses, that recovery would be reduced in

proportion to the value of the settlement to the claim, and (2)

the value of the settlement was approximately one-sixth that of

the total claim.  547 U.S. at 274.

Relying on this, a number of courts have calculated the

reimbursement for Medicaid expenditures that a state should

receive from a personal injury settlement to a beneficiary simply

by "determin[ing] what percentage the settlement is of the

[beneficiary's] total claim, and then apply[ing] that percentage

to the sum paid by [the state under its Medicaid program] to the

---

[3] Of course, even if the beneficiary and the tortfeasor do
specifically designate some or all of the settlement as
compensation for non-medical expenses, that designation is not
binding on either the state or a court making an allocation
decision.  See Harris, 16 Misc. 3d at 680; Lugo, 13 Misc. 3d at
688.  That is not an issue here, though, because Burtsell's
settlement was an unallocated "lump sum" payment.

beneficiary." Bolanos, 87 Cal. Rptr. 3d at 181.  This approach has become known as the "Ahlborn formula."  See, e.g., Lima, 94 Cal. Rptr. 3d at 194.  Expressed mathematically, the Ahlborn formula is essentially:

$$\text{Reimbursement Due} = \text{Value of Medicaid lien} \times \frac{\text{Total Settlement}}{\text{Full Value of Claim}}$$

A number of courts have used, or endorsed the use of, the formula in allocating personal injury settlements between Medicaid recipients and payors.  See, e.g., Lima, 94 Cal. Rptr. 3d at 195; Hudelson, 196 P.3d at 912; Lugo, 13 Misc. 3d at 687-88.

As the parties here agree, however, using the Ahlborn formula is not mandatory--nor is it without its potential difficulties, as illustrated by the many disputes about how to apply the formula in this case.  In Ahlborn, in contrast, the parties stipulated not only to the use of the formula, but to the value of each of the variables used in the formula itself.  547 U.S. at 274.  This approach, as one court has observed, avoided the need for "significant inquiry about how a settlement amount should be allocated in circumstances where the differing amounts claimed by the parties are subject to serious dispute."  See Tristani v. Richman, 609 F. Supp. 2d 423, 444 (W.D. Pa. 2009) ("Tristani I"), aff'd in part, vacated in part sub nom. Tristani

ex. rel. Karnes v. Richman, 652 F.3d 360 (3d Cir. 2011)

("Tristani II").

### 3.  New Hampshire's statute

As HHS acknowledges, "[l]ike the Arkansas statute at issue

in [Ahlborn], New Hampshire's [former] allocation formula has

been partially invalidated by Ahlborn."  Indeed, the relevant New

Hampshire statute was amended during the pendency of this case.

See note 1, supra.  The statute now provides in relevant part:

> III.  Whenever a recipient of medical assistance shall
> receive a settlement or an award from a liable third
> person or party, such recipient shall repay the amount
> of medical assistance furnished by the state to the
> extent that the amount of the recovery makes repayment
> possible.  If a recipient of medical assistance
> receives a settlement or an award from a third party,
> the settlement or award is subject to disbursement as
> provided in paragraphs III-a and IV.

> III-a.  The commissioner of [HHS] may recover the full
> amount of medical assistance furnished by the state
> from the portion of any settlement or judgment
> reasonably attributable to medical expenses . . . .

> IV.  A disbursement of any award, judgment, or
> settlement shall not be made to a recipient without the
> recipient or the recipient's attorney first providing
> at least 30-days written notice of any scheduled trial,
> alternative dispute resolution hearing, or settlement
> to the commissioner of [HHS] that the recipient has a
> claim which could result in a recovery from a third
> party . . . .  If a dispute arises between the
> recipient and the commissioner of [HHS] as to the
> settlement of any claim that arises under this section,
> the third party or the recipient's attorney shall
> withhold from disbursement to the recipient . . . an
> amount equal to the commissioner's claim.  Either party

> may apply to the . . . court in which an action based
> on the commissioner's claim could have been commenced
> for an order to determine an equitable apportionment
> between the commissioner and the recipient of the
> amount withheld.  The court shall have broad discretion
> to apportion the amount withheld as justice may
> require.

N.H. Rev. Stat. Ann. § 167:14-a.  As the parties acknowledge,
neither this court nor the New Hampshire Supreme Court has
addressed these provisions of the statute.

## III. **Analysis**

The parties here disagree on two key points.  First, they
disagree over the portion of Burtsell's settlement that
represents medical expenses and is therefore subject to HHS's
claim for reimbursement under Ahlborn.  Second, even within that
limit, they disagree over how much HHS should recover as a matter
of "equitable apportionment" under § 167:14-a.  Specifically,
Burtsell argues that medical expenses represent $59,408 of the
settlement, but that HHS should receive no more than $26,733.60
(and as little as $8,112.69) of this sum as a matter of equitable
apportionment.  HHS, in contrast, argues that at least $204,000
(and as much as $225,000) of the settlement represents payment
for medical expenses, and is therefore subject to its claim for
reimbursement, under Ahlborn--and that, as a matter of equitable

apportionment, HHS should receive reimbursement of its Medicare expenditures in full, i.e., in the sum of $75,892.30.

For reasons fully explained infra, this court, exercising its "broad discretion" to effect equitable apportionment under § 167:14-A, IV, awards HHS the sum of $53,124.61.  Because this is less than the amount of the settlement that--according to Burtsell's own calculations--represents payment for medical expenses, the court need not resolve the parties' many competing arguments over how to calculate that figure.  But the court rejects HHS's arguments that it is entitled to reimbursement in full either because (1) the amount of the settlement exceeded the amount of its Medicaid expenditures on Burtsell's behalf or (2) Burtsell failed to give HHS proper notice of the settlement under § 167:14-A, IV.  The court also rules that Burtsell is a prevailing party under 42 U.S.C. § 1988, entitling him to recover his reasonable attorneys' fees in this action.

Before addressing these issues, however, the court must consider Burtsell's argument, raised for the first time shortly before the evidentiary hearing, that the anti-lien and anti-recovery provisions of the federal Medicaid statute, 42 U.S.C. §§ 1396p(a) and (b)(1), pre-empt the New Hampshire statute insofar as it allows the state to "recover medical assistance furnished by the state from the portion of any settlement or

15

judgment reasonably attributable to medical expenses," N.H. Rev. Stat. Ann. § 167:14-a, III-a.  For the reasons explained below, the court rejects that argument as well.

### A.    Preemption

"A fundamental tenet of our federalist system is that constitutionally enacted federal law is supreme to state law. See U.S. Const. Art. VI. cl. 2.  As a result, federal law sometimes preempts state law either expressly or by implication." N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 74 (1st Cir. 2006), aff'd, 552 U.S. 364 (2008).  Burtsell makes an express preemption argument here.  He says that the anti-lien and anti-recovery provisions of the federal Medicaid statute (which, as discussed at Part I.B.2, supra, prevent states from placing liens on or obtaining recovery from the assets of any beneficiary on account of any Medicaid assistance paid on his behalf) preempt N.H. Rev. Stat. Ann. § 167:14-a, III-a (which, as just noted, allows the state to recoup Medicaid payments from settlements or judgments to beneficiaries).

In Ahlborn, the Supreme Court assumed, without deciding, that state laws imposing liens against settlements to Medicaid beneficiaries fell under an implied exception to the anti-lien and anti-recovery provisions (at least insofar as the settlements

16

included compensation for medical expenses).  547 U.S. at 284-85.
Burtsell's sole support for his argument that, contrary to this
assumption, the anti-lien and anti-recovery provisions in fact
preempt § 167:14-a, III-a, is the opinion of the District Court
for the Western District of Pennsylvania in Tristani I, supra.
Burtsell relies on this decision even though, since he first
cited it, it has been overruled by a divided panel of the Third
Circuit Court of Appeals in Tristani II, supra.  Burtsell now
urges this court to follow the district court's decision, and the
opinion of the dissenting circuit judge, rather than the opinion
of the panel majority.

    In Tristani I, the district court concluded that a
Pennsylvania statute allowing the state to recoup medical
expenses from the proceeds of a tort settlement to a Medicaid
beneficiary was preempted by the anti-lien and anti-recovery
provisions.  609 F. Supp. 2d at 468.  The court reasoned that a
lien on settlement proceeds logically could not arise until the
proceeds "materialized," and, at that point, the proceeds became
the recipient's "property."  See id. at 471-72.  The court ruled
that the Pennsylvania statute thus effectively placed a lien on
the beneficiary's "property" in violation of the anti-lien
provision.  Id. at 472.

17

The court further reasoned that, because the Pennsylvania statute entitled the state to recover its Medicaid payments by intervening in the beneficiary's action against the tortfeasor, there was no reason to allow the state to take a "free ride" by placing a lien on the resulting settlement proceeds instead. Id. at 473. As the appeals court subsequently explained, the district court thus attempted to "harmonize the conflicting provisions of the Social Security Act by interpreting them to require Pennsylvania to take an active role in the recovery of medical costs, either by intervening in lawsuits initiated by Medicaid beneficiaries or by directly pursuing liable third parties." Tristani II, 652 F.3d at 368-69. Accordingly, the district court held that, insofar as the Pennsylvania Medicaid law allowed the state to impose a lien against the proceeds of a third party's settlement with a beneficiary, i.e., to recover directly from those proceeds, the state law was pre-empted by the anti-lien and anti-recovery provisions of federal Medicaid law. Tristani I, 609 F. Supp. 2d at 473.

On appeal, however, the United States Court of Appeals for the Third Circuit concluded that the Pennsylvania statute allowing the state to recoup Medicaid payouts directly from settlements to beneficiaries fell within an implied exception to the federal anti-lien and anti-recovery provisions (as the

18

Supreme Court had assumed in Ahlborn).  Tristani II, 652 F.3d at

375.  Writing for the majority, Circuit Judge Hardiman reasoned:

> The text of the Social Security Act, when combined
> with its structure, purpose, and legislative history,
> reveals that Congress sought to accomplish different
> goals in enacting the anti-lien and anti-recovery
> provisions on the one hand, and the reimbursement and
> forced assignment provisions on the other hand.  While
> the anti-lien and anti-recovery provisions were
> intended to protect the assets of Medicaid recipients,
> the subsequently-enacted forced assignment and
> reimbursement provisions were intended to limit the
> financial burden of Medicaid on the states and ensure
> that Medicaid beneficiaries did not receive a windfall
> by recovering medical costs they did not pay.  In this
> context, the forced assignment and reimbursement
> provisions are best viewed as creating an implied
> exception to the anti-lien and anti-recovery provisions
> of the Act.

Id.

The conclusion of the court of appeals finds support in the

plain language of the provisions at issue.  Again, the anti-lien

and anti-recovery provisions state, in relevant part, that "[n]o

lien may be imposed against the property of any individual prior

to his death on account of medical assistance paid or to be paid

on his behalf under the State plan" and that "[n]o adjustment or

recovery of any medical assistance correctly paid on behalf of an

individual under the State plan may be made."  42 U.S.C. §§

1396p(a) and (b)(1).  They do not mention, at least specifically,

the beneficiary's rights of recovery against third parties.

But the assignment and reimbursement provisions do.  Those provisions, again, require that each state's Medicaid beneficiaries assign it their rights "to payment for medical care from any third party," id. § 1396k(a)(1)(A), and that states "seek reimbursement for [Medicaid] assistance" from third parties who have "legal liability" for it, id. § 1396a(a)(25)(B).  As Circuit Judge Hardiman observed, these provisions--allowing a state to pursue tortfeasors who have necessitated Medicaid expenditures--thus serve to "protect[] the public fisc while preventing Medicaid beneficiaries from receiving a windfall," i.e., recovering from third parties for medical expenses that the beneficiary did not himself pay.[4] 652 F.3d at 373.  These purposes are undermined if, as the district court ruled in Tristani, the state cannot recover against a tortfeasor's settlement with a Medicaid beneficiary, even if the settlement unquestionably includes reimbursement for medical expenses borne by the state, rather than by the beneficiary.  See id. (recognizing that, through the assignment and reimbursement provisions, "Congress intended to ensure that states recover

---

[4]Under the collateral source rule, which is followed in nearly all states, the beneficiary may recover those expenses from the tortfeasor nonetheless.  See, e.g., Aumand v. Dartmouth Hitchcock Med. Ctr., 611 F. Supp. 2d 78, 90-91 (D.N.H. 2009).

medical payments . . . <u>whenever</u> third parties are found liable")
(emphasis supplied).

Indeed, as the court further observed in Tristani II, it
defies not only the apparent purpose of the assignment and
reimbursement provisions but also "common sense to conclude that
Congress intended to protect the rights of Medicaid beneficiaries
to recover medical costs that they never paid in the first
place." Id. at 374.  While a court is not free to disregard a
clear statutory command on the basis of "common sense"--after
all, one man's common sense may be another man's nonsense--that
is a legitimate area of inquiry here, where there is considerable
tension if not irreconcilable conflict between the anti-lien and
anti-recovery provisions, on the one hand, and the assignment and
reimbursement provisions, on the other.

The most sensible resolution, as the court concluded in
Tristani II, is to read the provisions as allowing states to
recover Medicaid payments from third-party settlements to
beneficiaries that include reimbursement for those costs, rather
than forcing states to pursue those third parties directly.  This
approach gives states the power to reduce overall Medicaid costs
by ensuring that, to the extent possible, they are paid by the
parties responsible for causing them (as envisioned by the
assignment and reimbursement provisions) while preventing the

state from trying to recover those costs from the beneficiaries themselves (as envisioned by the anti-lien and anti-recovery provisions).  Thus, essentially for the reasons stated in Tristani II, this court rejects Burtsell's argument that 42 U.S.C. §§ 1396p(a) and (b)(1) pre-empt N.H. Rev. Stat. Ann. § 167:14-a, III-a.

### B.  **_Ahlborn_'s limit on recovery**

As already noted, the parties disagree on the amount of Burtsell's settlement that represents medical expenses and, as a result, is available to repay HHS's Medicaid costs under Ahlborn. Again, Burtsell argues that medical expenses represent $59,408 of the settlement, while HHS argues that at least $204,000 (and as much as $225,000) of the settlement represents medical expenses. This disparity results from three principal disputes over how to calculate the portion of an unallocated settlement that represents medical expenses:  (1) whether to use the "full value" of the plaintiff's claim, or the plaintiff's demand, in figuring the "discount" reflected by the settlement, (2) whether to count the plaintiff's attorneys' fees as part of the settlement, and (3) whether federal law permits a state Medicaid payor to recover from the portion of a beneficiary's personal injury settlement

representing future medical expenses, or limits that recovery to the portion representing past medical expenses.

It is unnecessary to resolve any of these disputes or, for that matter, HHS's more sweeping attack on the Ahlborn formula, here.  The holding of Ahlborn, as already discussed at length, is simply that federal Medicaid law limits a state payor's recovery from a beneficiary's settlement to that portion representing payment for medical expenses.  Here, Burtsell himself argues that this sum is $59,408, and for the reasons explained fully below, this court concludes that HHS is entitled to less than that sum (specifically, $53,124.61) as a matter of equitable apportionment under N.H. Rev. Stat. Ann. § 167:14-a, IV.  So deciding this case does not require resolving any of the potentially difficult and important issues the parties have raised as to calculating the maximum sum that a state Medicaid payor may recover from an unallocated personal injury settlement to a Medicaid beneficiary. It requires only that this court, exercising the "broad discretion" conveyed by § 167:14-a, IV, make an "equitable apportionment" of HHS's claim against Burtsell "as justice may require."  That apportionment decision follows.

**C.    Equitable apportionment**

As discussed supra, N.H. Rev. Stat. Ann. § 167:14-a sets
forth a process for HHS to recover its Medicaid payouts from
third-party personal injury settlement payments to Medicaid
beneficiaries.  Paragraph III of the statute provides that HHS
"may recover the full amount of medical assistance furnished by
the state from the portion of any settlement or judgment
reasonably attributable to medical expenses."  Paragraph IV of
the statute provides that, "[i]f a dispute arises between the
recipient and [HHS] as to the settlement of any [such] claim
. . . , the third party or the recipient's attorney shall
withhold from disbursement to the recipient . . . an amount equal
to [HHS's] claim."  Paragraph IV continues:

> Either party may apply to the superior court or the
> district court in which an action based upon the
> recipient's claim could have been commenced for an
> order to determine an equitable apportionment between
> [HHS] and the recipient of the amount withheld.  The
> court shall have broad discretion to apportion the
> amount withheld as justice may require.

(emphasis added).

Despite this clear language, HHS argues that it is entitled
as a matter of law to full reimbursement of its Medicaid payments
arising out of Burtsell's injuries.  This follows, HHS argues,
from either the fact that (1) the amount of the settlement
exceeds the amount of the Medicaid payments or (2) HHS did not

receive the notice of the settlement to which it was entitled under § 167:14-a, IV.  This court disagrees on both counts.

### 1.   Absolute priority

HHS bases its first contention principally on 42 U.S.C. § 1396k(b), part of the assignment provision of the federal Medicaid statute.  Again, that provision compels a state to require its Medicaid recipients "to assign the State any rights . . . to payment for medical care from any third party," 42 U.S.C.A. § 1396k(a)(1)(A), "[f]or the purpose of assisting in the collection of medical . . . payments for medical care owed to recipients of medical assistance," id. § 1396k(a).  Section 1396k(b) further provides:

> Such part of any amount underlined collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed . . . ., and the remainder of such amount collected shall be paid to such individual.

(emphasis added).  By its terms, then, this provision applies only to sums that a state itself collects from a third-party "under an assignment" of the beneficiary's rights to payment from that third party.  It does not apply when a beneficiary successfully enforces his own rights to payment from a third party by obtaining a settlement or judgment.  Indeed, when that

happens, the third party makes the payment to the beneficiary, not to the state, so it would make no sense to say that the state "collects" the payment, "retains" the sum necessary for reimbursement of its Medicaid expenditures, or "pays" any remainder to the beneficiary.  Section 1396k(b), then, confers no priority of payment upon the state in the case of a third-party settlement to a Medicaid beneficiary.[5]

Likewise, nothing in the relevant provisions of the state statute entitles HHS to such priority.  Indeed, the statute is to the contrary.  It is true that paragraph III of § 167:14-a provides that "[w]henever a recipient of medical assistance shall receive a settlement or an award or from a liable third person or party, such recipient shall repay the

---

[5]Though HHS suggests otherwise, there is nothing in Ahlborn to the contrary.  There, to support its argument that it could impose a lien against settlement payments to a Medicaid beneficiary even if they did not represent medical expenses, the state relied on § 1396k(b), arguing that the provision "shows that the State must be paid in full from any settlement." 547 U.S. at 281.  In response, the Court explained that "even assuming the provision applies in a case where the state does not actively participate in the litigation, [the] conclusion rests on [the] false premise" that the "amount recovered under an assignment is . . . the entire settlement"--which is false because "under the federal statute the State's assigned rights extend only to recovery of payments for medical care." Id. (emphasis added; quotation marks omitted).  This court is not willing to equate an assumption the Court made for the purpose of rejecting an argument as its endorsement of that assumption, particularly where the statutory language in question is directly to the contrary.

amount of medical assistance furnished by the state <u>to the extent</u>
<u>that the amount of the recovery makes repayment possible</u>"
(emphasis added).  The very next sentence, however, states that
"[i]f a recipient of medical assistance receives a settlement or
an award from a third party, the settlement or award is subject
to disbursement as provided in paragraphs III-a and IV."  Those
provisions make clear that the statute does not entitle HHS to
full recovery of its Medicaid expenditures on the sole condition
that they are less than the amount of the settlement.

Paragraph III-a provides that HHS "<u>may</u> recover the full
amount of medical assistance furnished by the state from the
portion of any settlement or judgment reasonably attributable to
medical expenses" (emphasis added), not that HHS "<u>shall</u> recover
the full amount," as HHS envisions.  <u>Cf.</u> <u>Appeal of Rowan</u>, 142
N.H. 67, 71 (1997) ("It is the general rule that in statutes the
word 'may' is permissive only, and the word 'shall' is
mandatory.")  Even more importantly, paragraph IV provides for
disbursement to occur by way of an "equitable apportionment,"
according to the court's "broad discretion . . . as justice may
require," in the event of a dispute between the recipient and HHS
as to its claim against the settlement.  This provision--and the
flexible process it envisions--would be unnecessary if, as HHS
argues here, it is simply entitled to repayment of its claimed

expenditures in full so long as they are less than the settlement
(or the portion of the settlement representing medical expenses).

Accepting HHS's argument, then, would mean ignoring
paragraphs IV (and III-a) and giving effect only to an isolated
sentence of paragraph III--even though paragraph III specifically
provides that third-party awards to Medicaid beneficiaries are to
be disbursed as provided in paragraph IV.  That flies in the face
of well-settled rules that associated sections of a statute
should be read together to determine its meaning, see, e.g.,
Ocasio v. Fed. Exp. Corp., 162 N.H. 436, 450-51 (2011), and that
no part of a statute be treated as surplusage, see, e.g.,
Gordonville Corp. N.V. v. LR1-A Ltd. P'ship, 151 N.H. 371, 375
(2004).  Instead, the court reads § 167:14-a to mean what its
says, namely, that HHS's claim for Medicaid expenses against a
third-party settlement to a beneficiary is subject to equitable
apportionment as set forth in paragraph IV, rather than entitled
to absolute priority.

## 2.   **Inadequate notice**

The court also rejects HHS's claim that Burtsell's failure
to properly notify it of the impending settlement creates a
presumption that HHS is entitled to full reimbursement.  Again,
N.H. Rev. Stat. Ann. § 167:14-a, IV provides:

> A disbursement of any award, judgment, or settlement shall not be made to a recipient without the recipient or the recipient's attorney first providing at least 30-days written notice of any scheduled trial, alternative dispute resolution hearing, or settlement to the commissioner of [HHS] that the recipient has a claim which could result in a recovery from a third party.

Here, Burtsell first informed HHS of his medical malpractice claim in June 2007, when a paralegal working for his attorney first contacted HHS to ask for information on its lien.  The next time HHS heard from anyone on Burtsell's behalf was on June 10, 2008, when his attorney asked HHS to compromise its Medicaid lien, explaining that he was working on settling the medical malpractice case.  HHS did not hear from Burtsell's attorney again, however, until a week or so after the medical malpractice action had in fact settled in mid-June 2008.  Nor did Burtsell inform HHS of the mediation session--which took place on June 3, 2008, but did not end in a settlement--until after the fact.

HHS argues that Burtsell therefore failed to provide it with the notice required by § 167:14-a, IV.  But that proposition is not entirely clear, given the structure of the statutory notice provision.  The provision prevents disbursement of a settlement or award to a Medicaid recipient unless HHS has received 30 days written notice--but notice of what, and 30 days from when?

29

HHS seems to take the position that it is entitled to 30 days prior notice of "any scheduled trial, alternative dispute resolution hearing, or settlement," but it is unclear how a recipient can provide advance notice of a settlement, which by its nature--and unlike a trial or alternative dispute resolution hearing--cannot be scheduled before it occurs (indeed, it can occur more or less spontaneously).  Another way read the provision would be simply to require 30 days notice of the claim before the payment on it is disbursed, but that construction reads the phrase "of any scheduled trial, alternative dispute resolution hearing, or settlement" out of the statute, and also would not provide HHS with the opportunity to participate in litigation, alternative dispute resolution, or settlement negotiations before they end.  In any event, Burtsell's attorney still has not disbursed to his client that portion of the settlement representing HHS's claimed lien, so if the statute requires notice to HHS 30 days prior to disbursement, it would seem that Burtsell has complied with it.

The textual problem--but not necessarily the practical one--could potentially be avoided by yet another reading of the provision, i.e., to require notice "that the recipient has a claim which could result in a recovery from a third party," so long as that notice occurs least 30 days before the claim

proceeds to trial, an alternative dispute resolution hearing, or settlement.  That is what Burtsell did here:  he told HHS of his medical malpractice claim in June 2007, which was considerably more than 30 days before the mediation session or the subsequent settlement.

Rather than trying to resolve this interpretive quandary here, this court will simply assume without deciding that Burtsell failed to comply with the notice requirement of § 167:14-a, IV, as HHS contends.  It does not follow that, as a consequence, HHS is presumptively entitled to reimbursement of its Medicaid expenditures in full.  Section 167:14-a, IV does not state that this--or, for that matter, any result at all--follows from a beneficiary's failure to give the required notice.  Since the statute does not provide any consequence for failing to provide notice, this court is disinclined to simply make one up.

This is especially true where the proposed "punishment"--a presumption entitling HHS to full reimbursement of its Medicare expenditures notwithstanding any other factors--would not seem to fit the "crime" of failing to give notice, at least in this case.  As a result of the initial communication from Burtsell's counsel, HHS knew that Burtsell, a Medicare recipient, had "a claim which could result in recovery from a third party."  HHS learned this more than a year before Burtsell ultimately reached the

settlement, but does not appear to have done anything in response other than to notify Burtsell that, in its view, he had not complied with the notice requirement.  And in the settlement, of course, neither Burtsell nor any of the other lienholders received the full amount of compensation they claimed as a result of his injuries.  Under these circumstances, there is no reason to believe that, had Burtsell provided the 30 days prior notice of the mediation session that HHS reads the statute to require, it would have--unlike everyone else--recovered the full amount of its expenditures.

To the contrary, HHS acknowledged here, through the testimony of an attorney who routinely represents it in negotiations over Medicaid liens on personal injury settlements, that it often compromises on its recovery during the settlement process because it is in the department's best interest to do so. There was also evidence that, in those relatively few cases where HHS has participated in the mediation of a personal injury case, it typically settles its claim for 50 percent of its value. Thus, although entitling HHS to a presumption of full recovery from a settlement reached without the required notice might be appropriate in some cases, it is not appropriate here.[6]

---

[6]This decision finds additional, if indirect, support in Ahlborn, where the Court rejected the state's argument that its

### 3.    The apportionment calculus

As noted supra, Burtsell argues that HHS should receive no
more than $26,733.60 (and as little as $8,112.69) from the
settlement for its claimed Medicaid expenditures, while HHS
argues that it is entitled to the full amount of those
expenditures, $75,892.30.  Again, this court "broad discretion to
apportion [this] amount . . . as justice may require." N.H. Rev.
Stat. Ann. § 167:14-a, IV.

Burtsell claims, based on expert testimony from two
different attorneys highly experienced in litigating personal
injury actions, that the total value of his claim was
approximately $5 million.  Because the gross settlement amount
was $850,000--but $315,328 of that payment was directed to his
attorneys' fees and costs, leaving $534,672--Burtsell calculates

lien against the beneficiary's settlement should be permitted to
exceed the portion representing medical expenses because she had
"breached her duty to 'cooperate' with [the state] or because
there is an inherent danger of manipulation in cases where the
parties to a tort case settle without judicial oversight or input
from the state." 547 U.S. at 287.  The Court observed that while
"the argument that a rule of full reimbursement is needed
generally to avoid the risk of settlement manipulation is
colorable," it was ultimately "unpersuasive," because "the risk
that parties to a tort suit will allocate away the State's
interest can be avoided" by, among other procedures, "submitting
the matter to a court for decision." Id. (footnote omitted).  Of
course, that is what happened here and, more importantly, it is
what § 167:14-a, IV, envisions in creating an action for
equitable apportionment.

that he received 10.69 percent of the value of the case in settlement.  Burtsell argues that, as a matter of equitable apportionment, HHS should get the same proportionate recovery of its claim:  $8,112.89 (10.69 percent of $75,892.30).

While this approach is not inequitable by any means, it does not fully reflect what happened in the settlement, in which not every interested party took such a deep discount.  Most significantly, the private insurer who paid the lion's share of Burtsell's medical expenses received $62,256.75 in settlement of its claim of $88,938.12, which works out to nearly 70 percent. Burtsell does not explain how it would be equitable for the private insurer to recover substantially more, as a percentage of its total claim, than HHS, and that proposition is not apparent to the court.  If anything, HHS's role as a taxpayer-funded insurer of last resort for the indigent would seem to point to the opposite conclusion.

By the same token, this court can see no reason that HHS deserves to recover more than 70 percent of its claimed expenditures here.  The very nature of a negotiated settlement of a lawsuit is that nobody gets everything he or she would have gotten if the case had proceeded to trial and resolved in his or her favor.  Burtsell's medical malpractice claim was no exception:  Burtsell, his private insurer, Medicare, the third-

party hospital, and even Burtsell's attorney each took less than any of them stood to recover as the best possible outcome.  It would not be equitable for HHS to recover in full nonetheless.

Indeed, the testimony of the HHS attorney at the evidentiary hearing was that HHS often compromises on its recovery during the settlement process because it is in its best interest to do so. There was also evidence that, at least in the relatively small number of cases where HHS participates in a mediation session, it ends up settling its claim for approximately 50 percent of its total.  Here, then, HHS is essentially asking for something that it almost certainly would not have even insisted on, much less received, had it participated in the settlement negotiations on Burtsell's medical malpractice claim.  That does not strike the court as equitable, or even reasonable.

Finally, allowing HHS to recover in full, at least in the absence of atypical circumstances, could potentially impose an obstacle to settlement in many of the personal injury cases where HHS has a claim for Medicaid expenditures.  If the beneficiary knows that HHS will ultimately receive reimbursement in full as the result of an equitable apportionment action, then the beneficiary will likely demand that the tortfeasor pay that sum in full--in addition to the sum necessary to make the beneficiary forego pursuing his claim against the tortfeasor.  Introducing

this "non-negotiable" element into settlement negotiations "might preclude settlement in a large number of cases, and be unfair to the recipient in others," as the Supreme Court recognized in Ahlborn.  547 U.S. at 288.

In sum, exercising its "broad discretion to apportion [HHS's claim] as justice may require" under § 167:14-a, IV, this court apportions 70 percent of that claim, or $53,124.61, to HHS, and the remainder to Burtsell.  The court cautions that this result is not intended to express the view that 70 percent (whether because it was the proportionate recovery obtained by Burtsell's private insurer, or otherwise) will always, or even presumptively, be the equitable resolution of a disputed HHS claim against a personal injury settlement; indeed, the nature of equity is that similar facts may produce different results in different cases.  It is merely this court's view of an equitable result in this case.

### D.  Attorneys' fees

Finally, Burtsell argues that, under 42 U.S.C. § 1988, he is entitled to recover his attorneys' fees for prosecuting this action.  Section 1988 provides that "[i]n any action or proceeding to enforce . . . [among other statutes, 42 U.S.C.

§ 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  HHS does not dispute that this was a proceeding to enforce § 1983.[7]

HHS also has not disputed that, if it failed to recover the full amount of its claimed lien in this matter--which, as just discussed, is indeed the outcome--then Burtsell would be a "prevailing party" under § 1988.  "Generally speaking, a 'prevailing party' is 'one who has been awarded some relief by the court,' meaning 'a judicially sanctioned change in the legal relationship of the parties.'" Diffenderfer v. Gomez-Colon, 587 F.3d 445, 453 (1st Cir. 2009) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603-05 (2001)).  "A plaintiff who receives a favorable judgment on the merits of a claim is the classic example of a 'prevailing party.'" Id.

---

[7]While HHS argued, in moving to dismiss the case for lack of subject-matter jurisdiction, that Burtsell had not stated a claim under § 1983, HHS did not argue that the relevant provisions of the federal Medicaid statute conferred no private rights enforceable under § 1983 (to the contrary, HHS more or less conceded that they did).  Instead, HHS argued that its dispute with Burtsell presented no question of federal law.  In denying HHS's motion to dismiss, the court rejected that argument.  See Burtsell, 2009 DNH 069, 9.

Burtsell readily fits that description here.  As a result of this order, this court will enter judgment directing that HHS receive only $53,124.61 of the $75,892.30 that was claiming. While this is not a complete victory, it is a victory nonetheless, and a tangible one at that, because it results in HHS's recovering less money from Burtsell's settlement than it had insisted on receiving.  It is not the sort of "purely technical or de minimis" success, or the mere "moral satisfaction," that could justify denying prevailing party status.  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001).  Indeed, while Burtsell did not get all of the relief he sought--which included rulings that HHS could get nothing from the settlement because § 167:14-a is preempted by federal law or, in the alternative, that HHS should get only about $8,100 as a matter of equitable apportionment--"the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to the eligibility for a fee award at all." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989).

Nor is Burtsell's status as a prevailing party affected by the fact that this court decided the case in Burtsell's favor without completely resolving his claim that HHS's insistence on

recovering in full was at odds with federal law.  In Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1298 (1st Cir. 1997), the court of appeals held that "it is immaterial for § 1988 purposes that plaintiffs' success in the § 1983 action results from a favorable ruling on a relevant issue of state law, so long as the state law issue and the federal claims being made in the § 1983 proceeding are closely interrelated."  That is the case here. Burtsell sought relief against HHS's insistence on recovering the full amount of its Medicaid expenditures on the grounds that its position violated federal Medicaid law or, in the alternative, was not an "equitable apportionment" under state Medicaid law. As the balance of this order makes clear, these claims are "factually and legally interconnected" so that Burtsell may recover his fees under § 1988 even though this court resolved one of his federal-law arguments against him and did not reach the other ones.

Again, HHS has not questioned that Burtsell is "the prevailing party" under § 1988.  Instead, HHS argues that Burtsell "is not entitled" to attorneys' fees because he failed to give it the notice of the mediation session which, in its view, is required by § 167-14:a, IV.  But even if Burtsell did fail to give the notice required by state law--a point which, as

discussed supra, is far from clear--HHS does not explain how that
would disentitle Burtsell to recovery of his fees here under
§ 1988.  As the very case that HHS cites in support of this
argument states, "the Supreme Court has interpreted § 1988 to
require attorney's fees save for rare cases in which 'special
circumstances' would render an award unjust."  United States v.
Cofield, 215 F.3d 164, 170 (1st Cir. 2000).  While the court of
appeals has recognized that "special circumstances warranting a
denial of attorneys' fees under § 1988 have been found if there
is a showing of outrageous or inexcusable conduct by plaintiffs
(or plaintiffs' counsel) during the litigation of the case,"
Williams, 113 F.3d at 1301 (quotation marks omitted), any
deficiency in the notice that Burtsell provided to HHS surely did
not rise to that level.

    HHS also argues that "[t]his case involves a good faith
dispute over several novel legal issues.  An award of fees and
costs is therefore not appropriate."  But even taking this
characterization of HHS's position at face value, it too has no
impact on Burtsell's entitlement to attorneys' fees.  The court
of appeals has squarely held that "[t]he good faith of defendants
is not a controlling factor in determining whether or not
plaintiffs merit an award" of attorneys' fees under § 1988.
Williams, 113 F.3d at 1301.  As the court explained, § 1988

> is not meant as 'punishment' for 'bad' defendants who
> resist plaintiffs' claims in bad faith.  Rather, it is
> meant to compensate civil rights attorneys who bring
> civil rights cases and win them.  The need for such law
> suits, and such payment, may well be greatest in those
> instances in which lawyers and officials, in totally
> good faith, have opposing views of what state and
> federal law requires of them.

Id. at 1302 (quoting Coal. for Basic Human Needs v. King, 691

F.2d 597, 602 (1st Cir. 1982) (Breyer, J.)).  So, whatever HHS's

motivations were for insisting on reimbursement in full from

Burtsell,[8] they are irrelevant to his entitlement to fees under

§ 1988.  All that relief demands is that he prevail in a § 1983

action, and, again, HHS does not dispute that Burtsell has done

just that.

Accordingly, the court rules that Burtsell is entitled to

recover "a reasonable attorney's fee as part of the costs" here

under § 1988.  Burtsell shall file an application for attorneys'

fees, together with all necessary supporting documentation,

within 30 days of the date of this order.  HHS shall file its

---

[8]It must be noted here that, beginning in the relatively
early stages of this litigation, the court informed HHS on
several occasions that its entitlement to full reimbursement was
doubtful at best, and urged HHS to reconsider its position,
rather than continuing to consume public and private resources
through this lawsuit.  HHS refused to do so even though, as
discussed at length, its position is obviously at odds with
§ 167:14-a, IV.

objection to the application, if any, within 14 days of Burtsell's filing.

## III. **Conclusion**

For the foregoing reasons, this court orders an equitable apportionment of HHS's claim to Burtsell's settlement, in the amount of $53,124.61 to HHS and the balance to Burtsell. Burtsell's attorney shall forthwith disburse those sums from the escrow account in which they are currently held.  The clerk shall enter judgment accordingly and close the case.

Burtsell shall file an application for attorneys' fees, together with all necessary supporting documentation, within 30 days of the date of this order.  HHS shall file its objection to the application, if any, within 14 days of Burtsell's filing.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 10, 2012

cc:  David P. Slawsky, Esq.
     Jason D. Reimers, Esq.
     Nancy J. Smith, Esq.

42